Jonathan S. Sanoff
Harold B. Woolfalk
H.B. WOOLFALK & ASSOCIATES, P.C.
113 Walworth Avenue
Scarsdale, New York 10583
Telephone: (914) 725-4406
Email: hbwoolfalk@msn.com
Email: jonathan.sanoff@gmail.com
*Attorneys for Defendants Simmons and Strickland*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOHN SWANN HOLDING CORP., derivatively :
on behalf of CLUBCREATE, INC.           :    Case No. 13 CV 8619 (AT) (JLC)
                                        :
               Plaintiff,               :
                                        :
     -against-                          :
                                        :
COREY SIMMONS, CURTLAND FIELDS,         :
ANNETTE STRICKLAND and CLUB             :
CREATE, INC.                            :
                                        :
               Defendants.              :
-----------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF THE MOTION
BY DEFENDANTS STRICKLAND AND SIMMONS
TO DISMISS OR STRIKE THE AMENDED COMPLAINT**

Dated: May 12, 2014

# TABLE OF CONTENTS

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Concessions in Plaintiff's Opposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.   Defendants' Method of Analyzing the Amended Complaint is Correct . . . . . . . . 2

    C.   Strickland Cannot be Charged with Knowledge of Simmons'
        Alleged Diversion of Funds for the Benefit of Her Daughter . . . . . . . . . . . . . . . . 3

    D.   Plaintiff's "Pattern of Misconduct" Argument is Fallacious . . . . . . . . . . . . . . . . . 5

        1.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.   Conclusory Pleading Infecting the Argument . . . . . . . . . . . . . . . . . . . . . . 5

        3.   Non-Actionable Matters Impermissibly Sought
            To be Promoted to Actionable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.   Plaintiff's Failure to Monitor Claim is Conclusory . . . . . . . . . . . . . . . . . . . . . . . . 9

    F.   Plaintiff's Claim of Self-Interest for Failure to Sign
        Contracts is Defective . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.   The Resignations of Strickland and Fields are Irrelevant . . . . . . . . . . . . . . . . . . 11

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# **TABLE OF AUTHORITIES**

<u>Statutes and Rules</u>

8 Del. C. §102(b)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,7

8 Del. C. §141(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5

*Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150 (Del. Ch. 2005) . . . . . . . . . . . . . . . . 10

*Frantz Manuf. Co. v. EAC Indus.*, 501 A.2d 401 (Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Glaser v. The9, Ltd.*, 772 F. Supp.2d 573 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Krys v. Pigott*, Nos. 12-3575(L) and 12-3586(C),
2014 U.S. App. LEXIS 6666 (2d Cir. April 11, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Massey Energy Co. Deriv. & Class Action Litig.*,
No. 5430-VCS, 2011 Del. Ch. LEXIS 83 (Del. Ch. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pension Ben. Guar. Corp. v. Morgan Stanley Invest. Mgt. Inc.*,
712 F.3d 705 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pogostin v. Rice*, 480 A.2d 619 (Del. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. v. Leasehold Interest in 121 Nostrand Ave.,
Apt. 1-C, Bklyn., N.Y.*,  760 F. Supp. 1015 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**I.      Introduction**

Defendants Annette Strickland and Corey Simmons respectfully submit this reply memorandum of law in support of their motion to dismiss and strike the amended complaint.[1]

**II.     Argument**

    **A.      Concessions in Plaintiff's Opposition**

Plaintiff's memorandum has not disputed and therefore has conceded the following points in defendant's moving memorandum:

    (1) The Simmons Declaration (DK-24) and the two exhibits it authenticates are properly before the Court on this motion to dismiss. (DK-22 at 10.) The first exhibit is the certificate of incorporation of ClubCreate, Inc. ("CCI"). (DK-24-1.) It contains a provision exculpating the defendant directors from personal liability which is the focus of the motion. (DK-24-1 at 2; DK-22 at 11-12.) The second exhibit is an email relating to negotiations among CCI, Zayas and Anthony referred to in the amended complaint. (DK-24-2; DK-22 at 15-17.)

    (2) Simmons has moved for partial dismissal of Count I of the amended complaint. (DK-22 at 19.) At the pre-trial conference plaintiff questioned the propriety of a motion for only partial dismissal of a count, but plaintiff's memorandum did not oppose this procedural approach. Accordingly, there is no need for alternative relief under Fed. R. Civ. P. 12(f). (*Id.* at 20.)

    (3) The amended complaint's repeated use of the term "defalcations" loosely refers to all kinds of alleged failures to meet obligations, not its primary and common meaning, which is embezzlement. (DK-22 at 7.)

---

[1] Citations to filed documents are abbreviated below as "DK-#." The amended complaint is DK-18. The moving papers consist of the notice of motion (DK-21), the declaration of Corey Simmons (DK-24) with exhibits (DK-24-1 and 24-2), and the memorandum of law (DK-22). Plaintiff's memorandum in opposition is DK-31.

### B. Defendants' Method of Analyzing the Amended Complaint is Correct

Plaintiff's opening argument is that defendants incorrectly analyzed specific allegations without considering the amended complaint as a whole. (DK-31 at 11 (defendants "attempt to dissect the Amended Complaint and address each of its many separate allegations in isolation and in a vacuum;" *id.* at 1 ("defendants treat . . . plaintiff's allegations . . . as if they were individual targets in a shooting gallery that defendants can 'pick off' one-by-one and in isolation, without reference to the context established by the Amended Complaint as a whole"); see, *id.* at 12-13, n. 7 ("all allegations" should be accepted "as true," and only then be tested for plausibility).)

On the contrary, defendants followed the method mandated by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (DK-22 at 12.) The first duty is to clear away the chaff of conclusory allegations, because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . mere conclusory statements do not suffice." *Id.* at 678. What constitutes the whole pleading fit to be considered on a motion to dismiss can only be determined after conclusory allegations have been discarded. Accordingly, the Supreme Court held that examination of a complaint may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The Court itself explicitly used that method: "[w]e begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680.

Following *Iqbal*, defendants analyzed ten key allegations of the amended complaint. (DK-22 at 12-19.) Defendants tested them under the pleading requirements of *Twombly* and *Iqbal* and substantive Delaware law. The allegations either were found to be conclusory or they did not properly allege more than a breach of the duty of care, which is not actionable because of the

exculpatory provision in the CCI certificate of incorporation and 8 Del. C. §102(b)(7). (DK-22 at 11-12 and 19.) There was no need to refer to the pleading as a whole or the plausibility of its allegations because the amended complaint failed the threshold tests.

Most of plaintiff's cases are pre-*Iqbal*. (DK-31 at 11-12.) Except for *Pension Ben. Guar. Corp. v. Morgan Stanley Invest. Mgt. Inc.*, 712 F.3d 705, 717-19 (2d Cir. 2013), which supports defendants' position (DK-22 at 9-10), none of plaintiff's cases addresses the divergent methods of plaintiff and defendants on this motion. Plaintiff nowhere shows that defendants' analysis of any particular allegation should be changed by reference to the amended complaint as a whole.

Except for the allegation that Strickland knew that Simmons had diverted CCI funds for the benefit of her daughter (see §II(C) below), plaintiff has not tried to rebut any of defendants' showing that key allegations are conclusory and therefore are not presumed true on a motion to dismiss. (DK-22 at 12-19.) Instead of addressing defendants' showing, plaintiff's memorandum wrongly flaunts the conclusory allegations as if there were no question of their legitimacy. (See §II(D)(2) and (E) below.)

### C. Strickland Cannot be Charged with Knowledge of Simmons' Alleged Diversion of Funds for the Benefit of Her Daughter

The most inflammatory allegation against defendant Annette Strickland is that she knew of and condoned Simmons' unlawful diversion of CCI funds for the benefit of her daughter Robin Strickland. Robin was also Simmons' girlfriend. Simmons is said to have used corporate money to pay rent on an apartment he shared with Robin and for "supposed 'loans'" to her. (DK-18, ¶53.) Defendants showed that the allegation of Annette's knowledge was the same as the allegation of Attorney General Ashcroft's knowledge that was disapproved of in *Iqbal* as "conclusory and not

entitled to be assumed true." (DK-22 at 17.) Plaintiff's memorandum dismisses this as "frivolous," but does not address *Iqbal*. (DK-31 at 16.)

Instead, plaintiff says that a "plausible inference of knowledge" can be "pled generally." (*Id.*) *Iqbal* also rejected this argument. 556 U.S. at 686-87. The Supreme Court held that Fed. R. Civ. P. 8 "does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687. Last month, the Second Circuit confirmed the continuing authority of this tenet of *Iqbal*, emphasizing that "'generally' is not the equivalent of conclusorily." *Krys v. Pigott*, Nos. 12-3575(L) and 12-3586(C), 2014 U.S. App. LEXIS 6666 at *25 (2d Cir. April 11, 2014).

Plaintiff nevertheless insists that the inference of Annette Strickland's knowledge is "easily supported by the intimacy of the parties." (DK-31 at 16.) Plaintiff has no other fact to back up the allegation of knowledge. Plaintiff's only case on the issue does not support its position. In *Wight v. BankAmerica Corp.*, 219 F.3d 79, 92 (2d Cir. 2000), "personal relationships" among the defendants were augmented by four more important facts which cumulatively justified an inference of knowledge.

Without additional supporting facts, which plaintiff does not have, there can be no reasonable inference that the mother of an adult daughter who lives apart from the mother knew of financial wrongdoing benefitting her adult daughter. Even mothers are not omniscient. Thus, in *U.S. v. Leasehold Interest in 121 Nostrand Ave., Apt. 1-C, Bklyn., N.Y.*, 760 F. Supp. 1015, 1033 (E.D.N.Y. 1991), a civil forfeiture case in which a mother was found to have no knowledge of drug dealing by her children, even though they lived with her in the same apartment, Judge Weinstein took "judicial notice of the widespread lack of knowledge of children's drug activities in all kinds

of families."  Similarly, an inference, based solely on relationship, that a mother would condone wrongdoing benefitting her adult daughter, would be unreasonable speculation.

Even at the pleading stage, to infer knowledge of and acquiescence in wrongdoing on the basis of parental status alone, as plaintiff urges, would invite meritless litigation and the oppression of innocent parents.  As the Supreme Court held in *Iqbal*, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  556 U.S. at 678-79.

### D. Plaintiff's "Pattern of Misconduct" Argument is Fallacious

#### 1. Introduction

Plaintiff repeatedly charges defendants with a "pattern of misconduct" (DK-31 at 2, 3, 5 and 15 (twice)), "spearheaded by Mr. Simmons and condoned by Mr. Fields and Ms. Strickland" (*id.* at 3).  This is meant to encompass all wrongs alleged, thereby fitting in with plaintiff's erroneous argument on consideration of the amended complaint as a whole (§II(B) above), and providing a reason for its partisan retelling of the facts (DK-31 at 3-10).  There are two principal defects:  conclusory pleading and non-actionable matters.

#### 2. Conclusory Pleading Infecting the Argument

The "pattern of misconduct" argument relies on conclusory allegations, which is improper on a motion to dismiss.  (§§II(B) and (C) above.)

Paragraph 46 of the amended complaint alleges:

> Simmons's defalcations and the Company's failings were known to, and condoned by, and in certain instances facilitated by defendants Strickland and Fields. . . [who failed to take] appropriate steps, consistent with their fiduciary duties, to ensure that Mr. Simmons's improper conduct ceased, to seek redress therefor and to rectify the

>> manifest corporate failings that have threatened the very viability of the Company . . .

(DK-18, ¶46.)

Defendants showed that the allegation is conclusory. (DK-22 at 14.) Plaintiff did not address the point. Nevertheless, plaintiff uses ¶46's sweeping attribution to Strickland and Fields of knowledge of every corporate failing as the part of its "pattern of misconduct" argument. (DK-31 at 5, 6, 8 ("CCI's corporate failings were known to, and as the Amended Complaint alleges, 'in certain instances facilitated by defendants Strickland and Fields'") and 17 (defendants "acted . . . with full knowledge" of CCI's breaches and failures).)

Another important part of the "pattern of misconduct" argument, premised on conclusory pleading, is the contention that CCI kept no financial records and that Strickland and Fields engaged in no financial monitoring. (DK-31 at 2 ("utter failure to establish basic financial reporting and review procedures"); 3 ("failed to establish even the most rudimentary corporate and financial oversight functions"); 6 (failure to monitor "the Company's financial affairs" and "failure to maintain proper financial reporting systems"); 14 ("complete failure to monitor the financial circumstances of the Company"); 15 (failure to "maintain proper records"); 16 (<u>Fields and Strickland knew</u> the "Company did not maintain adequate financial records"); and 17 ("failure to maintain proper financial records").)

As shown in defendants' memorandum (DK-22 at 8), the amended complaint alleges that CCI failed to maintain books and records including "recording revenues, expenses and disbursement of loan proceeds." (DK-18, ¶64(c).) But, ¶64(c) is a summary allegation which purports to rely on prior fact pleading. Its only source can be DK-18, ¶36. There, it is alleged that,

when CCI failed to provide plaintiff with net revenue documentation, "it became clear that CCI had not maintained proper financial records."

The failure to provide net revenue documentation cannot justify the conclusory leap to alleging the failure to maintain any financial records. Indeed, the uncontradicted email annexed as Ex. B to the Simmons declaration relates that the accountant "Kyle has all of the ClubCreate financials per the Bylaws." (DK24-2 at 1-2.) Likewise, the failure to provide net revenue documentation cannot justify the conclusory leap that Strickland and Fields knew of a failure to maintain financial records or themselves failed to monitor CCI's finances.

In summary, plaintiff's "pattern of misconduct" is infected with conclusory pleading. Plaintiff's contention that Strickland and Fields knew of every corporate failing is conclusory. The contention that CCI failed to maintain financial records is conclusory. The contentions that Fields and Strickland knew about the failure to maintain records and failed to conduct financial monitoring is also conclusory. This directly undermines plaintiff's duty to monitor claim addressed in §II(E) below.

### 3. Non-Actionable Matters Impermissibly Sought To be Promoted to Actionable

The "pattern of misconduct" argument impermissibly tries to elevate non-actionable matters, which implicate only the duty of care (DK-22 at 11-19) into components of liability for breach of the duty of loyalty. *Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del. 2001) (dismissing complaint notwithstanding plaintiff's contention that its "due care claims . . . [were] intertwined with, and thus indistinguishable from, the duty of loyalty and bad faith claims").

Before detailing the non-actionable matters, it is important to revisit the strong protection the director defendants have under the exculpatory provision of the CCI certificate of

-7-

incorporation and 8 Del. C. §102(b)(7). (DK-22 at 11-12.) As defendants' memorandum sets forth, and plaintiff has not disputed:

> "Even if the plaintiffs had stated a claim for gross negligence, such a well-pleaded claim is unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims." *Malpiede v. Townson*, 780 A.2d 1075, 1094-95 (Del. 2001). Gross negligence "is conduct that constitutes reckless indifference or actions that are without the bounds of reason. . . . Because such conduct breaches the Director Defendants' duty of care, this violation is exculpated by the Section 102(b)(7) provision in the Company's charter and therefore the Director Defendants' motion to dismiss for failure to state a claim must be granted." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008).

(DK-22 at 11-12.)

Under these uncontested precedents, much, if not most, of the amended complaint concerns non-actionable allegations of breach of the duty of care.

As part of the "pattern of misconduct," plaintiff emphasizes that CCI "systematically failed to honor its contractual commitments by *inter alia*, receiving funds and valuable services from contractual counterparties and offering nothing in return." (DK-31 at 15.) Defendants' memorandum candidly catalogued the allegations of breach of contract.[2] (DK-22 at 5-8.) However, there is no allegation that these were the product of bad faith or breach of the duty of loyalty. (DK-22 at 13 concerning ¶¶29 and 34.) Accordingly, they are limited to the duty of care and cannot result in defendants' personal liability. While plaintiff has expressed disdain for this conclusion (DK-31 at 1), plaintiff has not disputed it, except by the "pattern of misconduct" argument.

---

[2] Here, contracts alleged to have been made and later breached are addressed. Plaintiff asserts that CCIs' failure to enter into written agreements with Zayas and Anthony was a breach of the directors' duty of loyalty. (DK-31 at 17.) This is addressed in §II(F) below.

Included in the allegations of breach of contract are CCI's failure to elect directors nominated by Zayas and Anthony. (DK-18, ¶¶19, 29 and 31; DK-31 at 4, 5, 7 (twice) and 15.) Because Delaware directors are elected by shareholders, not the other directors, the allegation cannot affect any of the defendants. (DK-22 at 12-13.) Plaintiff did not address the point.

It has been shown in §II(D)(2) above that the allegations of CCI's failure to keep financial records is conclusory. It is also only a breach of the duty of care, because plaintiff has not alleged that the failure is the product of bad faith or breach of the duty of loyalty. The same applies to the failure to file income tax returns. (DK-22 at 13-14.) Nor is there any suggestion that this was known by Strickland or Fields, except for plaintiff's catch-all conclusory ¶46. These allegations play no proper role in plaintiff's "pattern of misconduct" argument or the motion.

### E. Plaintiff's Failure to Monitor Claim is Conclusory

Plaintiff's claim that Strickland and Fields breached their duty to monitor CCI's affairs (also called an oversight or *Caremark* claim) is alleged in DK-18, ¶55. Defendants showed that the allegation was conclusory and contrary to settled Delaware law for failure to allege that the directors "knew they were not discharging their fiduciary obligations." (DK-22 at 17-18, quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (emphasis added).) Plaintiff relies on *Stone* (DK-31 at 12, 13, 14 and 15), and does not deny that ¶55 is conclusory.

Plaintiff seeks to uphold the claim on the grounds that Strickland and Fields knew CCI "did not maintain adequate financial records and had not filed *any* tax returns," thereby confirming "their facilitation of CCI's utter failure to establish and follow information systems and controls to monitor the financial status of the Company," which "directly facilitated Mr. Simmons' financial improprieties." (*Id.* at 16-17.) Plaintiff's memorandum fails to cite to any paragraph of

the amended complaint in support of this. Because ¶55 is conclusory, and by reason of the analysis of plaintiff's other conclusory pleading in §II(D)(2) above, no requisite knowledge can be ascribed to Strickland and Fields and the claim must fall.

### F.     Plaintiff's Claim of Self-Interest for Failure to Sign Contracts is Defective

The amended complaint asserts that defendants breached their duty of loyalty to CCI by failing to execute agreements being negotiated with Zayas and Anthony in August 2013 and insisting that a proposed stockholders' agreement include a provision that they could not be removed as directors based on their prior conduct. (DK-18, ¶¶47-49.)

Defendants said the allegation was defective, because it omitted the Delaware pleading requirement that "perpetuation of self in office or otherwise in control was the sole or primary purpose of the wrongdoer's conduct." (DK-22 at 15-16, quoting *Pogostin v. Rice*, 480 A.2d 619, 627 (Del. 1984) (emphasis in original.)

Notwithstanding plaintiff's attempt to distinguish *Pogostin* (DK-31 at 17-18, n. 11), it is cited for a correct statement of Delaware law by the Delaware Supreme Court and its continuing authority cannot be questioned. *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001) ("'It is the plaintiff's burden to allege with particularity that the improper motive in a given set of circumstances, i.e., perpetuation of self in office or otherwise in control, was the sole or primary purpose of the wrongdoer's conduct'") (quoting *Pogostin*; emphasis in original); *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 188 (Del. Ch. 2005) ("I likewise conclude that neither Dornbush nor a majority of the members of the Benihana Board had entrenchment or dilution of BOT as their sole or primary purpose in approving the BFC Transaction") (emphasis added); *Frantz Manuf. Co. v. EAC Indus.*, 501 A.2d 401, 408 (Del. 1985) ("[t]his Court has often held that when

a board acts for the <u>sole or primary purpose</u> of perpetuating its own control, this improper motive overrides the ordinary protection of the business judgment rule") (emphasis added; collecting authorities including *Pogostin* at the Chancery Court level).

Defendants showed, through an email quoted in the amended complaint, that there were five unresolved material terms which separated the parties, and that the directors' bargaining position, that they should remain in office and the grounds for their future removal should be limited, was just one of them. There was no proper allegation that entrenchment was the sole or primary purpose of the defendants' decision not to sign. (DK-22 at 16.)

Plaintiff's contention that defendants improperly placed a condition on honoring "*existing* legal obligations" (DK-31 at 18, n. 11 (emphasis in original) is not supported by the email. Among the open terms was Anthony's demand for $100,000 in new legal fees, a significant exaction and no existing obligation of CCI. (DK-22 at 16.) Moreover, it is commonplace in commercial transactions similar to the one under negotiation, where there are changes in the board or shareholders, for incumbents to seek indemnification for prior acts. *In re Massey Energy Co. Deriv. & Class Action Litig.*, No. 5430-VCS, 2011 Del. Ch. LEXIS 83 at *61 (Del. Ch. 2011) ("[i]t is typical for counsel for a seller to bargain for indemnity"). Defendants' posture was no different. Nor is there any allegation that the negotiations broke up because defendants insisted on limiting the grounds for their removal from the board; the amended complaint does not say when or why negotiations foundered. (DK-18, ¶48.)

### G. The Resignations of Strickland and Fields are Irrelevant

The resignations of Strickland and Fields as CCI directors present an anomalous circumstance. Prior to filing the case, plaintiff demanded that Strickland and Fields resign. (DK-18,

¶58.) The amended complaint seeks to enjoin Strickland from serving as a director, (*id.* at 17, Wherefore Clause C), and doubtless also would have sought to enjoin Fields had he not resigned earlier. Yet, plaintiff's memorandum seeks to infer wrongdoing from their resignations. (DK-31 at 18.)

The amended complaint alleges that Strickland and Fields resigned from CCI's board of directors "in response to the revelation" of Simmons' "misconduct and the inaction, if not affirmative facilitation of that misconduct" by them. Defendants showed the pleading was conclusory. (DK-22 at 12.) It is also irrelevant.

There is no allegation that the resignations caused any damage to CCI, or were themselves actionable or invalid. Well prior to Fields' September 2013 resignation and Strickland's resignation following the filing of the original complaint in December 2013 (DK-18, ¶¶5-6), CCI was evidently moribund: Anthony's funding of the start-up ended in March 2013 (*id.*, ¶33), CCI's bills weren't being paid (*id.*, ¶¶42 and 45) and CCI was "without the means" to repay Anthony (DK-24-2 at 2). The resignations are not pleaded as a predicate for liability in Count I of the amended complaint (DK-18, ¶¶64-65) – they are not what plaintiff is suing about.

Plaintiff cites no Delaware authority, and its cases concern only inapposite and narrow circumstances of post-resignation liability (theft of corporate opportunity and receivership). (DK-31 at 18.) A Delaware director "may resign at any time" on notice to the corporation. 8 Del. C. §141(b). Even in fraud cases, a resignation must be "highly unusual and suspicious" to suggest wrongdoing, *Glaser v. The9, Ltd.*, 772 F. Supp.2d 573, 598 (S.D.N.Y. 2011) (citation and internal quotation marks omitted), a situation absent here.

### III. <u>Conclusion</u>

The motion to dismiss the amended complaint, in its entirety against defendant Annette Strickland and in part against defendant Corey Simmons, should be granted in all respects.

Dated: May 12, 2014

                               Respectfully submitted,

                               Jonathan S. Sanoff
                               Harold B. Woolfalk
                               H.B. WOOLFALK & ASSOCIATES, P.C.
                               113 Walworth Avenue
                               Scarsdale, New York 10583
                               Telephone: (914) 725-4406
                               Email: hbwoolfalk@msn.com
                               Email: jonathan.sanoff@gmail.com
                               *Attorneys for Defendants Simmons and Strickland*